Good morning, Illinois Appellate Court, 1st District. Court is now in session, the 4th Division. The Honorable Justice Robert E. Gordon presiding. Case number 2-0-0455, People v. Shimon Luckey. Good morning. Would the lawyers who are going to argue this case before us please introduce yourself to the court? Good morning, Your Honors. My name is Maria Harrigan and I represent Mr. Luckey in this case. Good morning, Your Honors. I am Assistant State's Attorney Jessica Roberts representing the people of the state of Illinois. Okay, Appellant, are you going to reserve some time for rebuttal? Yes, I'll reserve a minute or two for rebuttal. Okay, let's proceed. Mr. Luckey was charged with attempt murder and attempt armed robbery based on an incident that happened at a cell phone store in January of 2016. The judge acquitted him of the attempt murders on the trial counsel's motion for directed verdict, but convicted him after trial of the attempt armed robbery. Based on his criminal background, Mr. Luckey was eligible to be sentenced as a Class X offender anywhere from 6 to 30 years. However, the imposition of a 16-year sentence, 10 years above the minimum in this case, was excessive in light of the mitigation factors and based upon the judge's improper consideration of Mr. Luckey's trial testimony as aggravating. What do you think he should have been sentenced to? Well, we've asked either for a term closer to the minimum or a remand for resentencing because of this improper factor, which makes this case a little bit different than a straight-out excessive sentence argument here. He did plead not guilty and testified on his own behalf, and during his testimony, although he denied trying to rob the cell phone store, he did admit to another crime, identity theft. An identification card was given to him and he was going to be paid cash for trying to buy this phone based on this other person's identity. He was unemployed at the time and needed the money. At sentencing, he made a statement apologizing for his poor decisions to the court and to the victims and for not being a productive citizen. Just before imposing sentence, the judge said he was impressed by Luckey's apology, but disappointed that he did not accept responsibility for his actions when he testified. The juxtaposition of Luckey's testimony with his statement and elocution in this matter was both improper and illogical. A defendant has the constitutional right to maintain his innocence throughout trial, which is what Mr. Luckey did here. An admission to the charged offense as a trial would be tantamount to a guilty plea and is not required if a person is facing criminal charges. In addition, although lack of repentance after conviction can sometimes be considered as aggravating, this is not the case here. Again, his trial testimony was an admission to another crime. He admitted he had a firearm on him. But his statement at sentencing was an apology for those actions, for making the wrong decisions, to carry a weapon, to commit any crime. Thus, the trial court's conflation of the two statements into a finding of lack of remorse at trial couldn't have helped, but it improperly factored into the 16-year sentence imposed. Counsel, wasn't the sentence within the statutory range? I mean, the judge didn't sentence him beyond the statutory range, correct? No, it's not an illegal sentence, and that is not our argument that it's an illegal sentence. It's just the argument is this improper consideration of somebody's maintaining their innocence at trial as aggravating against the backdrop of the mitigation that we had here. And what about his 2011 convictions, his violent crime convictions? One was domestic violence, and the other one was aggravated battery with a weapon. Yes, the judge did consider his 2011, it was a domestic battery case that the judge considered as aggravating. But again, the judge also considered this improper factor, and there was a great deal of mitigation in this case. He had a childhood with parents struggling with substance abuse. He lost his father at a young age. He was physically abused as a child. He had his own substance abuse problems, which he attempted to get help for, treatment programs he attended. He apologized at court in sentencing for his behavior. And as testament to his character, despite the fact that he was abused by his mother, he remained close with her, and she's now disabled, and he expressed a desire to help her. Again, we acknowledge that any crime with a firearm is serious, so the nature of the offense must be taken into account. However, again, Mr. Lucky did apologize for his bad decisions, and he was the only person who was injured, who suffered any injury in this offense. Although he did have prior convictions, he was 39 years old when sentenced, and he is, as Presley says, aging out of the criminal justice system. The state makes the argument that Lucky is merely asking this court to rebalance the aggravating and mitigating factors in a way more favorable to him. On the contrary, he asks this court to merely correct the trial court's consideration of an improper factor, in light of the mitigation here, and reduce his sentence to a term closer to the minimum, or at least remand this cause for a new sentencing hearing with the consideration of proper factors. Does this man have any rehabilitation potential? He has a lot of rehabilitation potential. He has attended substance abuse treatment. While he was in jail, he made a statement in elocution that he had made incorrect decisions throughout his life. He has children, who were actually, two of his daughters were present in court during his trial. While he's in prison, he's exhibited characteristics that show he is able to be rehabilitated. His outdate was reduced by a month since the state's brief was filed, and I know you're not allowed to consider new evidence, but he's just taking advantage of those programs in prison. Anyone have any questions? I would just like you to state what the defendant said again, and then state what the judge said again. If you can quote them, because I want to see what you're saying exactly the judge said that is an improper factor. What the judge said was, when he was right before sentencing, the judge said that he was impressed by his statement in elocution, and his apology, which expressed remorse at that point, but he also said that he considered that in light of his testimony, when he wasn't accepting responsibility, when he testified is a quote from the judge. So he was considering the defendant's testimony at trial, and conflating that with his statement in elocution at sentencing. And what the judge, and so, and what his testimony at trial... You're not, I was trying to get the exact quote, because it seems like you're putting more words in than the judge said. I'm trying to hear it. I've read it. I can't envision it word for word. But it could read that the judge is saying, but he was lying when he was testifying. And that's why I want to hear it exactly. If you can't, if you can't, I will look it up in the records. No, I can. Do you want to hear what the judge said at sentencing or what the defendant said at sentencing? I wanted to know what the defendant said, and then what the judge said. Okay. Well, what the defendant said is, first and foremost, I'm reading from the record now on page 304. First and foremost, I would like to apologize to my daughter, the court. Unfortunately, Michael Posey and Mike Jaffelin is not here today. And the court interrupts with a question, and then he continues. I say, unfortunately, Michael Posey and Michael Jaffelin is not here today. I still want to apologize for my shortcomings in not being a productive citizen to society. When you know better, you do better, and I know better. And when you know better and don't do better, the consequences could be more harsh. And I made a poor decision, and I almost lost my life in 2016, January the 13th. I got taught a valuable lesson that there is no right way to do wrong. Either I'm going to be on the right side of the fence or the wrong side. And I'm tired of reaping the consequences, and I'm trying to just reap the benefits of doing the right thing. And I just want to apologize for being in the court system again. That's all.  All right. And then the judge said, I'm a little impressed by what you say today, Mr. Lucky, as being putting you in contact with reality about your situation, apologizing. Maybe today, maybe in front of your daughter, you sort of realized a little bit more about the terrible mistakes that you've made with your life here, especially in this particular case. That wasn't really the case when you testified. That didn't really demonstrate any acceptance of responsibility at that time. But I do take into consideration that you seem to have changed your ways a little bit now. So that is the entire paragraph that the judge said at sentencing. And that's on page 308 in the record. All right. Thank you. You're welcome. OK. Let's hear from the state. I'm Assistant State's Attorney Jessica Roberts again on behalf of the state. In evaluating the trial court sentence, this court, of course, must consider whether or not there was abuse of discretion. And here there was none. The trial court, in fact, fulfilled its purpose at sentencing. It crafted a careful balance between protecting society and allowing for the rehabilitation of the defendant. And that sentence was 14 years below the maximum, well within the allowable guidelines. Moreover, the court considered all appropriate factors and mitigation and aggravation. And it's for these reasons that the state asks this court to affirm the defendant's sentence of 16 years. Now, in striking that careful balance, the trial court considers many factors. Credibility, demeanor of the defendant, general moral character. Of course, this is not exhaustive. Of the utmost importance, not just serious importance, of the utmost importance is the nature of the crime and the role of the defendant in committing that crime. Now, in considering all of these, of course, the trial court must make a determination on an individual basis and consider the specific circumstances. And it's in a unique position. It has more than just the cold record. It has everything that happened during trial up through sentencing to consider. And it's for this reason that reviewing court should exercise its discretion sparingly in a situation concerning a sentencing. This sentencing was well within the guidelines. Attempted armed robbery with a firearm is generally a class one offense with a range of four to 15 years. And this defendant's background, as noted, subjected him to sentencing as a class X offender, carries a range of six to 30 years. The sentence was well within and well under these allowable guidelines. And there's a presumption when a sentence falls within the allowable guidelines that it's not excessive unless it's against the spirit and purpose of the law or unless it's greatly disproportionate to the nature of the offense. Now, here, defendant used a gun. Defendant raised a gun. Defendant pointed a gun at not one but two people. And incredulously, defendant is arguing that his sentence should be reduced because while he was armed with the firearm during the attempted robbery, he didn't fire it. And instead, he sustained injuries rather than any of the victims. The state asks this court not to overlook the gravity of defendant's actions merely because one of the victims had the good fortune to legally arm himself that day. Defendant used a gun. He raised his arm. He pointed it at not just one but two victims. And therefore, the sentence was not disproportionate. And it enjoys that presumption of propriety. Defense relies on a case, People v. Nelson, where the defendant's sentences were reduced on appeal. However, that court relied on the ages of the defendants as well as their prior nonviolent convictions. Those defendants were 20 and 26. That's not the case here. Defendant was 39 years old when sentenced and his prior convictions, he was on mandatory supervised relief for aggravated domestic battery by strangulation. And still, the court sentenced him well below the maximum allowable guidelines. And it had ample opportunity to evaluate the mitigation and aggravation. There was a pre-sentencing investigative report. And of course, it was at its fingertips where there is one. The court enjoys a presumption that it considered it. But moreover, the court stated explicit consideration of that pre-sentence investigating report, which addressed the learning disability, substance abuse, and abuse of childhood. Moreover, the court did not improperly rely on a plea of not guilty in its sentencing. In fact, this is rebutted by the record because he relies on the testimony. And again, as we heard, it says, I do take into consideration that you seem to have changed your ways a little bit now. Saying he was impressed with defendant's words. This is an acknowledgment by the court that the defendant demonstrated responsibility for his actions and his allocution. And that he would consider that, which he did. And sentencing the defendant so far below the maximum. And this isn't a case where the defendant just pled guilty. It's a case where the defendant testified. And the judge is explicit that he was considering it in light of the testimony, not his not guilty plea. Again, the trial court benefited by seeing this testimony in real time, live. And was able to discern that at sentencing, there had been a change in the defendant. By which the judge was impressed. Indicating, I might add, that that would be taken in mitigation, not in aggravation. Fence also mentions the possibility of aging out. But factually, defendant is not aging out. He was on mandatory supervised release when he committed this crime. He's not aging out. He's still committing crimes while on mandatory supervised release. Defendant is asking this court to rebalance the factors. And there hasn't been a demonstration of an abuse of discretion. Trial court heard the evidence. Heard the factors and mitigation. Had the pre-sentence investigative report. And after reviewing all of that, the trial court sentenced defendant to 14 years below the statutory maximum. That is well within the guidelines. Defendant had a gun. Defendant used that gun. He used it by pointing it at two victims. That's a threat of harm to both family and society. And it's for these reasons that the state asks this court to affirm the defendant's sentence of 16 years imprisonment. What about their argument that the trial court didn't specifically delineate all the mitigating factors with regards to sentencing? The court also enjoys a presumption in that case that they considered all mitigating evidence before. And is actually under no obligation to outline the specific factors that it considered in sentencing. Moreover, even the existence of a mitigating factor doesn't require the trial court to impose a minimum sentence. Okay, any further questions by any members of the panel? None, thank you. Okay, let's hear the rebuttal. Your Honor, I don't quibble with the legal standards that my opponent has argued for you today. The one point I would ask you to please look at again is the trial judge's reliance on Mr. Lucky's testimony. Where he admitted to several crimes during his testimony and then apologized for his behavior. And somehow conflating that into some kind of type of aggravation. Because in his testimony, he wasn't taking responsibilities for his actions. That's an infringement on his right to maintain his innocence and require the state to prove him guilty beyond a reasonable doubt. If you have no further questions, we would just request that the sentence be reduced or remanded for a new sentencing hearing. Thank you. Any further questions? None. Thank you. Thank you for your arguments and you will have an order or an opinion very shortly. The court will be adjourned.